## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD FELTON | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 4:16-40155-TSH** |
| COLETTE M. GOGUEN | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## AMENDED ORDER AND
## REPORT AND RECOMMENDATION

### September 27, 2017

Hennessy, M.J.

By Order of Reference dated April 25, 2017 (Docket #26), the following matters were referred to me: Petitioner Richard Felton's (1) First Motion to Amend Habeas Corpus Petition (Docket #9); (2) Motion for Bail (Docket #10); (3) Motion for Partial Summary Judgment (Docket #13), to which Respondent filed a Cross-Motion for Summary Judgment (Docket #22); (4) Motion to Defer Judgment on Motion for Bail (Docket #20); (5) Renewed Motion for Bail (Docket #26); (6) Motion for Leave to Supplement Reply to Respondent's Cross-Motion for Summary Judgment (Docket #28); (7) Motion for Judicial Notice (Docket #30); (8) Second Motion for Leave to Supplement Reply to Respondent's Cross-Motion for Summary Judgment (Docket #32); (9) Second Motion to Amend Habeas Petition (Docket #34); (10) Second Motion for Judicial Notice (Docket #35); (11) Third Motion to Amend Habeas Petition (Docket #36); (12) Motion for Hearing (Docket #37); (13) Motion to Supplement Proposed Amendment to Habeas Petition

1

(Docket #38); (14) Fourth Motion to Amend Habeas Petition (Docket #41); and (15) Fifth Motion to Amend Habeas Petition (Docket #43). Petitioner's Motion for Partial Summary Judgment (Docket #13) and Respondent's Cross-Motion for Summary Judgment (Docket #22) were referred to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). All other motions were referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A). These matters are now ripe for adjudication.

In consideration of the foregoing submissions and for the reasons that follow, I recommend that the Court GRANT Respondent's Cross-Motion for Summary Judgment (Docket #22) and DENY Petitioner's Motion for Partial Summary Judgment (Docket #13). Further, Petitioner's First Motion to Amend and Supplement (Docket #9) is ALLOWED, Petitioner's Motion to Defer Judgment on Motion for Bail (Docket #20) is DENIED AS MOOT, and the remaining twelve motions are DENIED (Docket ##10, 26, 28, 30, 32, 34, 35, 36, 37, 38, 41, and 43).

I.    BACKGROUND

On March 10, 2008, Petitioner was convicted in Essex County Superior Court of rape, kidnapping, indecent assault and battery, and assault and battery. (Docket #1 at 2.) He was sentenced to six to eleven years in state prison. (Id.) Petitioner moved for a new trial, contending that his trial counsel was ineffective for failing to adequately cross-examine the victim and that the prosecutor knowingly misstated the evidence in closing argument. (Id. at 7.) Petitioner's first motion for a new trial was denied (id.), and on January 4, 2011, the Massachusetts Appeals Court affirmed that denial. Commonwealth v. Felton, No. 09-P-1137, 2011 Mass. App. Unpub. LEXIS 10 (Mass. App. Ct. Jan. 4, 2011) [hereinafter Felton I].

Petitioner filed a second motion for a new trial on March 23, 2011, alleging that the closure of the courtroom during jury selection violated his Sixth Amendment right to a public trial.

(Docket #1-1 at 8.)  On April 3, 2012, Judge Lowy of the Essex County Superior Court allowed Petitioner's motion, concluding that the courtroom closure amounted to a structural error warranting a new trial.  (Id. at 31.)  On July 2, 2015, the Massachusetts Appeals Court reversed Judge Lowy's decision and reinstated Petitioner's convictions.  Commonwealth v. Felton, No. 12-P-792, 2015 Mass. App. Unpub. LEXIS 729 (Mass. App. Ct. July 2, 2015) [hereinafter Felton II]. The Appeals Court reasoned that Petitioner waived any claim based on the courtroom closure by failing to object during jury empanelment or raise the issue in his first motion for a new trial.  Id. The Massachusetts Supreme Judicial Court (the "SJC") denied Petitioner's application for further appellate review.  Commonwealth v. Felton, 473 Mass. 1106 (2015).  The Supreme Court denied certiorari on October 3, 2016.  Felton v. Massachusetts, 137 S. Ct. 212 (2016).

On October 26, 2016, Petitioner filed a Petition for Writ of Habeas Corpus.  (Docket #1.) Petitioner has since filed fifteen motions relating to this petition.  Respondent opposed Petitioner's Motion for Bail, Petitioner's Renewed Motion for Bail, and Petitioner's Motion for Partial Summary Judgment.  (See Docket #17, #22, and #27.)  Respondent also cross-moved for summary judgment as to each of the petition's grounds.  (Docket # 22.)

In his petition, Petitioner asserts the following four grounds for relief:

**Ground One**:  "The trial court committed automatic reversible error, when it secretly closed the courtroom during [jury] empanelment without considering Waller [v. Georgia, 467 U.S. 39, 48 (1984)] [f]actors. . . .  A court officer, acting according to his long-standing practice of closing the courtroom during jury selection, surreptitiously closed the courtroom for all of jury selection at the petitioner's trial, excluding all members of the public, including the petitioner's family and friends, for the entire duration of jury selection, without ever alerting the trial judge, the prosecutor[,] or defense counsel—so Waller factors were never considered by the trial court.

**Ground Two**[1,2]:  "The structural defect public trial violation accomplished behind defense counsel's back rendered the entire trial fundamentally unfair, and constructively denied the petitioner counsel altogether because it became impossible for defense counsel to ensure a fair trial for the petitioner, which the Supreme Court has said is the entire purpose of counsel under the effective assistance guarantee of the Sixth Amendment."

**Ground Three**:  "State interference prevented counsel from assisting this petitioner for an entire phase of his trial."

**Ground Four**[3,4]:  "The state court's procedural rule that first faults a defendant for failing to object to a public trial violation that was hidden from defense counsel, and then requires a prejudice demonstration requirement in order to obtain relief, is an inadequate state procedural ground, because it lacks any fair or substantial support in prior state law and was applied freakishly."

(Docket #1; see Docket #9-1.)

II.   STANDARD

A.   Motions for Summary Judgment

Summary judgment is appropriate in habeas proceedings, as in other civil actions, "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1]  In Petitioner's First Motion to Amend, he seeks to change the wording of Ground Two to clarify his argument.  This new wording is the version recited in the text above.  (Docket #9-1 at 8.)  Ground Two of the petition originally stated, "The structural defect accomplished behind defense counsel's back rendered the entire trial fundamentally unfair, constructively denying counsel altogether because it became impossible for counsel to ensure a fair trial for the petitioner, which the Supreme Court has said is counsel's sole purpose under the effective assistance guarantee." (Docket #1.)

[2]  Pursuant to Ground Two, Petitioner does not claim that he received ineffective assistance of counsel; rather, he contends he was constructively denied assistance of counsel entirely as a result of the alleged public trial violation. See Docket #1; see also Commonwealth v. Felton, No. 12-P-792, 2015 Mass. App. Unpub. LEXIS 729, at *3 ("The defendant does not claim he received ineffective assistance of counsel, but that he was entirely deprived of his attorney's assistance because she was unaware of the court room's closure, and thus unable to object.").

[3]  Petitioner's habeas petition asserts three grounds for relief, but his First Motion to Amend (Docket #9) seeks to add Ground Four.  (See Docket #9-1 at 11.)

[4]  In his Second Motion to Amend (Docket #34), Petitioner seeks to incorporate into Ground Four the following:  "The state court's procedural rule is inadequate to bar federal habeas review of the public trial claim asserted in Ground One, because the procedural rule was not created until years after the Petitioner's alleged defaults took place." (Docket #34 at 1.)  Petitioner subsequently filed a motion to supplement this proposed amendment.  (Docket #38; see Docket #39 at 1.)  In that motion, Petitioner seeks to add to Ground Four the argument that all three of his procedural defaults—i.e., his failures to raise the issue (1) at trial, (2) in his first motion for a new trial, and (3) on direct appeal—do not bar federal habeas review, because the state procedural rules postdate all three defaults.  (Docket #38; see Docket #39 at 1.)  Thereafter, Petitioner filed another motion seeking to supplement his proposed Ground Four (Docket #41), followed by yet another motion to supplement Ground Four (Docket #43).

judgment as a matter of law." Fed. R. Civ. P. 56(a); see Bader v. Warden, No. 02-508-JD, 2003 U.S. Dist. LEXIS 8955, at *9 (D.N.H. May 28, 2003). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

When applying this standard in the context of a habeas petition, the requirements of 28 U.S.C. § 2254 govern. See Hanson v. Gerry, No. 13-cv-448-JD, 2014 U.S. Dist. LEXIS 85732, at *6 (D.N.H. June 24, 2016). To that end, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), [Petitioner] must show that the challenged state court adjudication was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that the decision 'was based on an unreasonable determination of the facts.'" Pena v. Dickhaut, 736 F.3d 600, 603 (1st Cir. 2013) (quoting 28 U.S.C. § 2254(d)). This "highly deferential" standard of review "requires the petitioner to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" Id. (quoting Burt v. Titlow, 134 S. Ct. 10, 16 (2013)).

B.      Motions to Amend and Supplement

Pursuant to 28 U.S.C. § 2242, habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." Courts therefore look to Federal

Rule of Civil Procedure 15(a) and 15(d) to determine whether to permit amendment or supplement to a federal habeas petition.  See Laurore v. Spencer, 396 F. Supp. 2d 59, 63 (D. Mass. 2005). Pursuant to Rule 15(a), "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant' as well as the 'futility of the amendment,' leave to amend the petition should be freely given." Prall v. Cambridge Dist. Court, No. 09-10961-JLT, 2010 U.S. Dist. LEXIS 143730, at *5 (D. Mass. Mar. 8, 2010) (quoting Douglas v. Walker, No. 99 Civ. 3626 (VM)(KNF), 2000 U.S. Dist. LEXIS 9391, at *1 (S.D.N.Y. July 7, 2000)).

     C.     Motions for Judicial Notice

When deciding a habeas petition, the court "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  However, a court may take judicial notice of prior relevant court decisions. Lopes v. Riendeau, 177 F. Supp. 3d 634, 666-67 (D. Mass. 2016).

     D.     Motions for Bail

In assessing motions for bail in the habeas context, the First Circuit has stated that, "[w]hile the federal power remains, we regard a petitioner who has had a full trial and appeal as in a very different posture than if there had been no prior judicial determination of his rights. Nowhere is this more significant than with regard to bail." Inman v. Austin, No. 2:15-cv-00267-JAW, 2015 U.S. Dist. LEXIS 147908, at *5 (D. Me. Oct. 30, 2015) (quoting Glynn v. Donnelly, 470 F.2d 95, 97 (1st Cir. 1972)).  "Release should be granted to an offender pending collateral review only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Id. at *5 (quoting United States v. Vogel,

595 F. App'x 416, 416-17 (5th Cir. 2015)).  Notably, "federal courts very rarely find 'exceptional circumstances' and very rarely release petitioners before ruling on the merits of their claims. Indeed, there seem to be but a handful of decisions in which federal courts have released petitioners pending review of their claims."  Id. (quoting Blocksom v. Klee, No. 11-cv-14859, 2015 U.S. Dist. LEXIS 6974, at *4 & n.2 (E.D. Mich. Jan. 22, 2015)).

III.    ANALYSIS

A.    Motions for Judicial Notice

I first address Petitioner's First and Second Motions for Judicial Notice, which ask this Court to consider various judicial decisions in assessing Petitioner's other motions.  (See Docket #30 and #35.)  "Generally, in the federal system, 'the law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice without plea or proof.'"  Getty Petroleum Mktg., Inc. v. Capital Terminal Co., 391 F.3d 312 (1st Cir. 2004) (quoting Lamar v. Micou, 114 U.S. 218, 223 (1885)).  Because this Court is bound to consider relevant authorities, Petitioner's motions seeking judicial notice are gratuitous.  See SimpliVity Corp. v. Springpath, Inc., No. 4:15-13345-TSH, 2016 U.S. Dist. LEXIS 56000, at *4 (D. Mass. Apr. 27, 2016) (quoting Jones v. Tozzi, No. 1:05-CV-0148 OWW DLB, 2006 U.S. Dist. LEXIS 5755, at *1 n.1 (E.D. Cal. Feb. 15, 2006)) ("It is not necessary for the court to take judicial notice of published judicial decisions or of documents that are part of the record of this case.  Plaintiff may simply cite to these sources in his legal papers.").  I therefore DENY Petitioner's First and Second Motions for Judicial Notice. (Docket #30 and #35.)

B.      Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment

I turn next to Petitioner's Motion for Partial Summary Judgment (Docket #13) and Respondent's Cross-Motion for Summary Judgment (Docket #22).  I recommend that the Court DENY Petitioner's Motion for Partial Summary Judgment (Docket #10) and GRANT Respondent's Cross-Motion for Summary Judgment (Docket #22).

Petitioner moves for summary judgment as to Ground Three, arguing that the uncontroverted facts demonstrate a public trial violation during jury empanelment, notwithstanding his attorney's failure to object.  (Docket #13 at 3-5.)  Respondent counters that summary judgment should enter in her favor as to Grounds One, Three, and Four because Petitioner has procedurally defaulted on his public trial claim, which is pertinent to each of those three grounds.  (Docket #21 at 6.)  Notably, Ground Four is not part of the original petition: Petitioner seeks to add (and further supplement) that ground by way of amendment.  (See, e.g., Docket #9.)  Notwithstanding that Ground Four is not part of the original petition, because Respondent seeks summary judgment as to this ground, I ALLOW Petitioner's motion to add Ground Four and to reword Ground Two.  (Docket #9.)  However, I DENY Petitioner's other motions to amend or supplement because, for the reasons discussed infra, I find that the amendments and supplements sought are futile.  Respondent also seeks summary judgment as to Ground Two.  (See Docket #22.)

1.  Grounds One, Three, and Four

Grounds One, Three, and Four of the petition rest upon Petitioner's claim that the closure of the courtroom during jury selection violated his constitutional rights.[5]  The Sixth Amendment

---

[5] Ground One alleges that the courtroom closure violated Petitioner's Sixth Amendment right to a public trial; Ground Three asserts that the closure constituted "state interference" that deprived Petitioner of his constitutional right to counsel; and Ground Four contends that in Felton II, the Massachusetts Appeals Court improperly deemed Petitioner's

to the United States Constitution guarantees to all criminal defendants "the right to a speedy and public trial." Waller v. Georgia, 467 U.S. 39, 46 (1984). This right encompasses a trial's jury selection stage. Presley v. Georgia, 558 U.S. 209, 213 (2010); Owens v. United States, 483 F.3d 48, 66 (1st Cir. 2007). "Conducting jury selection in open court permits members of the public to observe trial proceedings and promotes fairness in the judicial system." Commonwealth v. Lavoie, 464 Mass. 83, 86 (2013). It is well settled that a violation of a criminal defendant's Sixth Amendment right to a public trial, when raised by the defendant on direct review, requires reversal. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1905 (2017); United States v. Marcus, 560 U.S. 258, 263 (2010) (citing Waller, 467 U.S. at 49). This is because violations of a defendant's public trial right fall within the doctrine of structural error, which the Supreme Court has explained "ensure[s] insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." Weaver, 137 S. Ct. at 1907. Structural errors "'affect[] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" Such errors typically "def[y] analysis by harmless error standards." Id. at 1907-8 (quoting Arizona v. Fulminante, 499 U.S. 309, 310 (1991)). Courts presented with a successful, preserved claim of structural error thus presume it was not harmless and reverse the underlying conviction. See, e.g., id. However, even a structural error "is subject to the doctrine of waiver." Commonwealth v. Morganti, 467 Mass. 96, 101 (2014) (quoting Mains v. Commonwealth, 433 Mass. 30, 33 n.3 (2000)).

---

public trial claim procedurally waived, rendering the Appeals Court's finding of waiver an inadequate state-law ground and thus permitting habeas review. See supra (see also Docket #1).

      i.   The Massachusetts Appeals Court Resolved Petitioner's Public Trial
           Claim on the Basis of an Adequate and Independent State-Law Ground

Before assessing the merits of Petitioner's public trial claim, this Court must first determine whether a state court has resolved it on the basis of an adequate and independent state-law ground. If so, this Court is precluded from conducting federal habeas review, regardless of "whether the state law ground is substantive or procedural." Coleman v. Thompson, 501 U.S. 722, 729 (1991). "[W]hen a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas review is proscribed, for such a determination constitutes an independent and adequate state procedural ground. Id. at 730 (citing Wainwright v. Sykes, 433 U.S. 72, 81 (1977)); cf. Coleman, 501 U.S. at 731 ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.").

Here, the procedural requirement at issue is the Massachusetts doctrine of procedural default, also known as procedural waiver. This doctrine imposes a higher standard of appellate review of a claim that a defendant has failed to raise in a contemporaneous trial objection, on direct appeal, or in an initial motion for a new trial. See, e.g., Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010) (citing Commonwealth v. Amirault, 424 Mass. 618, 646-47 (1997)) ("Where [a] constitutional challenge has not been properly preserved, we generally apply a standard of review less favorable to the defendant: we consider whether the error created a substantial risk of a miscarriage of justice."); Rodwell v. Commonwealth, 432 Mass. 1016, 1017 (2000) ("If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is [procedurally] waived.").

The record in this case is clear that the Massachusetts Appeals Court's opinion in Felton II, the operative state court decision, rested on the adequate and independent state-law ground of

procedural default, rendering Petitioner's public trial claim unreviewable by this Court.  The Massachusetts Appeals Court found that Petitioner procedurally waived his public trial claim by failing to contemporaneously object to the courtroom closure or raise it in his first motion for a new trial.  See Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *2 (finding that "the defendant waived his right to a public trial").  As such, a state court has "declined to address [Petitioner's] federal claims" because Petitioner "failed to meet a state procedural requirement."  Coleman, 501 U.S. at 729.  "[T]he First Circuit repeatedly has held that [Massachusetts's procedural default rule] constitutes 'an independent and adequate state procedural ground' that bars federal habeas review."  Thompson v. Massachusetts, No. 15-cv-13956-LTS, 2017 U.S. Dist. LEXIS 27056, at *16 (D. Mass. Feb. 27, 2017) (quoting Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010)).  Grounds One, Three, and Four of the petition thus are not subject to federal habeas review.

In Petitioner's motion seeking to supplement his opposition to Respondent's cross-motion for summary judgment, Petitioner challenges the Appeals Court's finding, arguing that it erroneously relied on Commonwealth v. LaChance, 469 Mass. 854 (2014),[6] and Commonwealth v. Wall, 469 Mass. 652 (2014), because those decisions postdate both Petitioner's 2008 trial and his first motion for a new trial, filed in 2009.  Petitioner argues that LaChance and Wall erected a new "procedural barrier" to his claims, rendering the Appeals Court's finding of procedural waiver an "inadequate" state-law ground.[7]  (Docket #33 at 1-2.)  I find Petitioner's argument unpersuasive.

In determining that Petitioner procedurally waived his public trial claim, the Appeals Court did principally rely on the dual authorities of LaChance and Wall.  See Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *2 (first quoting LaChance, 469 Mass. at 857; then quoting Wall, 469 Mass. at 672-73) ("'Where counsel fails to lodge a timely objection to the closure of the court

---

[6]  Petitioner here filed an amicus brief in Commonwealth v. LaChance, 469 Mass. 854, 855 (2014).
[7]  This argument, in essence, parallels the alleged errors outlined in Ground Four.

room, the defendant's claim of error is deemed to be procedurally waived.' Also, '[a] procedural waiver may occur where the failure to object is inadvertent.'" (alteration in original)).   After finding default, the Appeals Court applied the proper "substantial risk of a miscarriage of justice" standard and found that Petitioner was not prejudiced by the courtroom closure.  Id. at *2-4.  The Appeals Court therefore reversed the Superior Court's order granting Petitioner's second motion for a new trial.  See id.

Contrary to Petitioner's contention, however, both the contemporaneous objection requirement and its resulting "substantial risk of a miscarriage of justice" standard are long-established under Massachusetts law.  See Janosky, 594 F.3d at 44 ("We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts."); cf. Commonwealth v. Freeman, 352 Mass. 556, 564 (1967) (applying the substantial risk of miscarriage of justice standard).  Indeed, the Massachusetts Supreme Judicial Court noted in LaChance that presuming prejudice after counsel failed to lodge an objection would ignore the Court's "long recognized" distinction "between properly preserved and waived claims."  LaChance, 469 Mass. at 857 (citing cases).  Authorities upon which the SJC relied in Wall and LaChance predate Petitioner's 2008 trial and also make this proposition clear.  See, e.g., Wall, 469 Mass. at 672 (quoting Mains, 433 Mass. at 33 n.3 (citing United States v. Olano, 507 U.S. 725, 731 (1993) (highlighting "the 'familiar' principle that a right 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'")) ("[E]ven structural error is subject to the doctrine of waiver".)); id. at 673 (citing Amirault, 424 Mass. at 641 (quoting K.B. Smith, Criminal Practice and Procedure §§ 2070, 2084 (Supp. 1986) (explaining that the waiver doctrine

applies to constitutional claims not properly raised on direct appeal or in a prior motion for a new trial))) ("Where defense counsel did not object to any alleged court room closure at trial, and the defendant failed to raise the claim in his first motion for new trial, we conclude the defendant's right to a public trial during jury empanelment has been waived."); id. at 673-74 (citing Commonwealth v. Horton, 434 Mass. 823, 832 (2001) (concluding that a defendant who did not contemporaneously object or otherwise timely assert a violation of his public trial rights thereby "failed to preserve the issue for appellate review")).

Petitioner's argument that the Appeals Court improperly relied on decisions that postdate his trial and first motion for a new trial finds some support in the Appeals Court's observation that "[b]efore LaChance and Wall, it was not clear that the defendant had waived his right to a public trial by failing to [timely] object . . . ." Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *1. However, at best, this language merely refers to the fact that Massachusetts law was unclear about whether a defendant's waiver of a public trial must be "knowing." Indeed, the Superior Court framed the issue in precisely these terms:

> The evidence is overwhelming that the defendant raped the victim, and that the defendant's family's exclusion from the courtroom while the venire was in the courtroom could have had no impact on the jury's determination to a moral certainty that the defendant is guilty of rape. This Court is constrained, however, by the recent holdings of the Appeals Court in Commonwealth v. Lavoie, 80 Mass. App. Ct. 546, further appellate review allowed, 461 Mass. 1101 (2011), and Commonwealth v. Alebord, 80 Mass. App. Ct. 432, further appellate review denied, 461 Mass. 1103 (2011), and the ambiguity of the Supreme Judicial Court's decision in Commonwealth v. Dyer, 460 Mass. 728 (2011), as to whether, for there to be a waiver, a defendant must understand not only that the public has been excluded from the courtroom, but also that the exclusion constitutes a violation of the Sixth Amendment right to a public trial. This Court is of the view that a defendant has waived his right to a public trial if he understands what is occurring and does not object.

Docket 1-1 at 10-11 (footnote omitted).  In a footnote to the above, Judge Lowy further highlighted "ambiguity" in the SJC's waiver jurisprudence, noting that the SJC's decision in Commonwealth v. Dyer, 460 Mass. 728 (2011), "seemingly eliminated the 'knowing' element of the defendant's assent" to counsel's waiver of a defendant's substantive constitutional right.  Id. at 11 n.3 (citing Dyer, 460 Mass 728) (further citations omitted).  Judge Lowy acknowledged that "the 'knowing' requirement does appear to fall away, possibly based on the notion that . . . the defendant would have consented to the closure even if he had known that it constituted a violation of his right to a public trial."  Id. (citing Dyer, 460 Mass. at 736-37).

Petitioner's argument that he would not have been found to have waived his public trial claim had he raised it on direct appeal in 2009 (see Docket #33 at 2)—rather than having it heard in 2015 on appeal from his second motion for a new trial, after LaChance and Wall were decided— is therefore speculative.  This is precisely because, as the Appeals Court determined in Felton II, the law was "not clear" on this issue.  Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *1.  Put another way, the "procedural barriers" Petitioner identifies in LaChance and Wall were already part of the legal landscape before 2009.  What the SJC did in LaChance and Wall was not erect new procedural barriers, but rather resolve a split in authorities.  Hence, given the uncertainty in the law, a court could have supportably found waiver of Petitioner's public trial claim even in the absence of evidence that it was knowing.  Petitioner thus did not face a novel "procedural barrier" when the Appeals Court applied the enduring principle of procedural waiver in Felton II.  Accordingly, I find that the Appeals Court correctly concluded that Petitioner defaulted on his public trial claim.[8]

---

[8] The Massachusetts Appeals Court's application in Felton II of the substantial risk of a miscarriage of justice standard "does not work a waiver of the contemporaneous objection requirement."  Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006) (quoting Horton v. Allen, 370 F.3d 75, 80-81 (1st Cir. 2004)).

ii.  Petitioner Has Not Overcome His Default

Even though Petitioner has defaulted on his public trial claim, that is not the end of the inquiry, for a state prisoner who has procedurally defaulted on a claim may still obtain relief by demonstrating both cause for the default and actual prejudice resulting from the alleged violation of federal law.  See Caillot v. Gelb, No. 12-10581-RGS, 2015 U.S. Dist. LEXIS 175297, at *80 (D. Mass. Dec. 15, 2015) (citing Maples v. Thomas, 132 S. Ct. 912, 922 (2012)).  I find that Petitioner has shown neither cause for his default nor prejudice.  Accordingly, I conclude that Grounds One, Three, and Four of the petition fail as a matter of law, and I recommend that the District Court grant Respondent's motion for summary judgment as to these grounds.

"Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule.'"  Caillot, 2015 U.S. Dist. LEXIS 175297, at *80 (alterations and omission in original) (quoting Maples, 132 S. Ct. at 922)).  "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'"  Maples, 132 S. Ct. 922.  "That is so," the Supreme Court has reasoned, "because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent."  Id. (quoting Coleman, 501 U.S. at 753).

a.  Cause for Failure to Raise the Public Trial Claim After Petitioner's Conviction

I first address whether Petitioner has demonstrated cause for failing to raise the public trial claim on direct appeal or in his first motion for a new trial.  I find that Petitioner has not demonstrated such cause.  In his first motion for a new trial, and in his appeal of the denial of that motion, Petitioner presented two claims: first, that his trial counsel was constitutionally ineffective when cross-examining the victim and in failing to argue that medical records impeached the

victim's account of choking; and second, that the prosecutor knowingly misstated the evidence during closing.  (Docket 1-1 at 7.)  Petitioner made no mention of the public trial claim in these filings.  See generally Felton I, 2011 Mass. App. Unpub. LEXIS 10.  Petitioner now presents two ostensible causes for this failure.  First, he asserts that "[w]ith the reviewable trial record totally void of closure evidence, there was nothing in the record that could have alerted post-conviction counsel to the fact that a Sixth Amendment public trial claim was a presentable issue."  (See Docket #33 at 4.)  Second, he argues that the court officers' act of closing the courtroom amounted to "governmental interference" that prevented him from timely raising the public trial claim.  (See Docket #37 at 1.)

The record squarely contradicts Petitioner's arguments.  It shows that Petitioner personally and repeatedly advised his attorney ("post-conviction counsel")—who handled both the first motion for a new trial and the appeal from the denial of that motion—of the SJC's decision in Commonwealth v. Cohen.[9]  (See Docket #1-1 at 34.)  Petitioner also specifically told post-conviction counsel that "a similar thing had occurred at [Petitioner's] trial, and that [Petitioner's] parents and supporters were in the courtroom ready to watch the proceedings and were told to leave the courtroom while a court empaneled a  jury." (Id.)  Moreover, the record shows that Petitioner raised the public trial claim with post-conviction counsel three or four more times.  (See id. at 10, 34.)  Finally, the record shows that post-conviction counsel expressly chose not to raise the public trial claim because the trial record contained no objection to the courtroom closure, and because counsel felt that Petitioner had a good shot at a new trial on his other claims.  (See id. at 34, 39.)  Post-conviction counsel testified that he chose not to raise the issue after Petitioner

---

[9] In Commonwealth v. Cohen, 456 Mass. 94, 106-119 (2014), the Massachusetts Supreme Judicial Court held that court officers excluding members of the public from the courtroom and displaying a "Do Not Enter" sign during jury selection violated the defendant's Sixth Amendment right to a public trial, because the trial court did not find on the record that the factors set forth in Waller v. Georgia, 467 U.S. 39 (1984), justified closing the courtroom.

brought it to his attention, because counsel "just thought that it had no legal merit at the time." (See id. at 68-69.)

Counsel's strategic decision not to pursue the public trial claim on direct appeal is not cause "external to the petitioner." Maples, 132 S. Ct. at 922 (emphasis removed) (quoting Coleman, 501 U.S. at 753); see also id. (quoting Coleman, 501 U.S. at 753) ("[T]he attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of . . . [his agent's] conduct."). I therefore find that Petitioner has not established cause for failing to raise the issue in his first motion for a new trial or on direct appeal of his conviction.

                                                 b.  Cause For Failure to Contemporaneously Object to the Courtroom Closure

I next address whether Petitioner has demonstrated cause for failing to raise a contemporaneous objection to the courtroom closure. The relevant record in this case establishes the following. Without the knowledge of the judge, prosecutor, or Petitioner's attorney, court officers asked all persons who were not members of the venire, including Petitioner's family and supporters, to leave the courtroom during jury empanelment. (Docket #13 at 2.) Petitioner's attorney was unaware of the closure, and she would have objected to it had she known. (Id.) Petitioner was aware of the closure when it occurred (see Docket #1-1 at 4); in any case, Petitioner testified that he learned of it no later than that same evening. (See id. at 114.) Petitioner did not know that the exclusion of the public from the courtroom violated his Sixth Amendment right to a public trial, and he never mentioned the closure to his trial attorney. (See Docket #13 at 2.) The Appeals Court also found that Petitioner knew court officers closed the courtroom during jury selection. See Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *4 ("[Petitioner] did not inform his counsel or the judge when he saw his family being escorted from the court room.").

On this record, while it presents a closer question than Petitioner's failure to establish cause for raising his public trial claim post-conviction, I find that Petitioner has failed to show cause for failing to make a contemporaneous objection to the closure.  Petitioner's argument rests on the proposition that Petitioner failed to alert his lawyer or the judge to the closure because he did not understand the scope of his Sixth Amendment public trial right.  Such a failing is neither external to the Petitioner nor "cause" for his failure to object.  It is settled that a petitioner's ignorance of the law does not constitute cause.  See, e.g., Donovan v. Maine, 276 F.3d 87, 94 (1st Cir. 2002) (finding that cause was not shown where the petitioner misread the law and filed a late complaint); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (finding the petitioner not entitled to equitable tolling of a filing deadline because he did not know or understand the law) (citing cases); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) (citing Murray v. Carrier, 477 U.S. 478, 491 (1986)) (finding that the petitioner's "ignorance or inadvertence [did] not constitute 'cause'" for failing to object to a jury instruction on agency, even where the petitioner claimed insufficiency of evidence to disprove his agency defense).  Here, as in these cases, Petitioner's showing of cause depends on his ignorance of the law—i.e., his alleged failure to appreciate that excluding the public from jury empanelment violated his Sixth Amendment public trial right.  This ignorance does not constitute "cause." Petitioner's own lack of understanding of the Sixth Amendment cannot be attributed to any action of the court officers or anything else that is "external to the petitioner."  Maples, 132 S. Ct. at 922 (emphasis omitted) (quoting Coleman, 501 U.S. at 753).  Accordingly, I do not find cause for failing to make a contemporaneous objection to the closure.

c. Prejudice

Even though I find that Petitioner has not shown cause for his failure to raise his public trial claim on direct appeal or in his first motion for a new trial, or to contemporaneously object, see supra, I also consider whether Petitioner has shown actual prejudice.  I do so because in order to prevail, Petitioner must also demonstrate actual prejudice resulting from the alleged violation of federal law on which he has procedurally defaulted.[10]  See Caillot, 2015 U.S. Dist. LEXIS 175297, at *80 (citing Maples, 132 S. Ct. at 922).  I find that Petitioner has made no such showing here.

Although the Supreme Court has not expressly defined "prejudice" in the context of the procedural default doctrine, the Court has said that the required showing constitutes more than a "possibility of prejudice" and has explained that the violation must have "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982) (finding that overwhelming evidence of the petitioner's malice outweighed any risk of a fundamental miscarriage of justice or substantial likelihood of prejudice at trial caused by the court's instruction); see also, e.g., Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994) (finding, despite a failure to charge the jury on joint venture, that the appellant could not meet the "high burden of showing prejudice").

---

[10] Had Petitioner preserved and timely raised the public trial claim, prejudice arising from the courtroom closure would be presumed.  Cf. Weaver v. Massachusetts, 137 S. Ct. 1899, 1905 (2017) (noting that a violation of a criminal defendant's Sixth Amendment right to a public trial, when timely raised by a defendant on direct review, constitutes structural error that requires reversal).  But because Petitioner's public trial claim is not preserved, and because cause for the failure to preserve it has not been demonstrated, see supra, I do not presume prejudice.  Rather, in order to overcome his procedural default, Petitioner must show that prejudice ensued.  See LaChance, 469 Mass. at 857 (emphasizing that presuming prejudice as to a procedurally defaulted claim "would ignore the distinction, one long recognized by [the SJC,] between properly preserved and waived claims").

Here, the Superior Court Judge who presided over Petitioner's trial, and later considered Petitioner's public trial claim in his second motion for a new trial, summarized matters as follows: "The evidence is overwhelming that the defendant raped the victim, and that the defendant's family's exclusion from the courtroom while the venire was in the courtroom could have had no impact on the jury's determination to a moral certainty that the defendant is guilty of rape." (Docket #1-1 at 10.)  Similarly, the Appeals Court, in reversing the Superior Court's grant of the Petitioner's second motion for a new trial, found, in relevant part,

> The closing of the court room occurred during jury empanelment, as was the common practice at that time.  Because there is no "serious doubt whether the result of the trial might have been different" had the court room not been closed to the defendant's family members, the defendant has not shown that he was prejudiced by the closure, and thus there is no risk that justice miscarried.

Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *3-4 (citations and footnotes omitted).

Apart from these observations from the presiding trial judge of the Superior Court and the Massachusetts Appeals Court, I note that the record shows that, other than the courtroom closure during jury empanelment, Petitioner's trial was conducted openly and publically.  The closure was initiated by a court officer who acted without the knowledge of the prosecutor, defense counsel or the trial judge.  (Docket #1-1 at 9.)  Members of the venire observed the jury selection process until the 14-member petit jury was empaneled.  (See id. at 43-45.)  Petitioner himself accompanied his attorney each time the trial court questioned potential jurors at sidebar.  (Id. at 61.)  Additionally, the court officers did not lock the courtroom door or display a sign warning the public not to enter the courtroom.  (Id. at 48.)  Nor has Petitioner alleged that any of the "potential harms" of a courtroom closure—such as a suggestion that a juror lied during voir dire, an allegation of attorney or judicial misconduct, or an indication that any participant failed to approach his or her duties with neutrality and serious purpose—came to pass at any point in his proceedings.  Cf.

20

Weaver, 137 S. Ct. at 1913 (citing In re Oliver, 333 U.S. 257, 269 n.22 (1948)) (identifying harms that could arise from a courtroom closure during jury empanelment).

On this record, I find that Petitioner has failed to show prejudice and, for this reason also, I recommend that the Court GRANT Respondent's Cross-Motion for Summary Judgment (Docket #22) as to Grounds One, Three, and Four.

### d. Fundamental Miscarriage of Justice

Absent a showing of "cause" and "prejudice," a procedural default may still be excused, and a procedurally defaulted claim still considered, where the failure to hear a habeas claim would result in a "fundamental miscarriage of justice." Murray, 477 U.S. at 495-96. This exception may be invoked where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 496; Horton v. Allen, 370 F.3d 73, 81 n.3 (1st Cir. 2004) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "[T]o show actual innocence[,] one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty] . . . ." Sawyer v. Whitley, 505 U.S. 333, 336 (1992) (applying this standard to the petitioner's claims that he was improperly found eligible for the death penalty). Here, Petitioner makes no colorable showing of factual innocence. To the contrary, the judge who presided over Petitioner's trial described the evidence that Petitioner raped the victim as "overwhelming." (See Docket #1-1 at 10.) I agree with the Massachusetts Appeals Court that on this record, there is no risk that justice miscarried in this case.

Accordingly, I recommend that the Court GRANT Respondent's Cross-Motion for Summary Judgment (Docket #22) as to Grounds One, Three, and Four.

2.  Ground Two

Drawing on Petitioner's many filings, he claims in Ground Two that the courtroom closure was a structural error that took place without his or his trial attorney's knowledge, thereby rendering his trial "fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  (See Docket #9-2 at 18-19 (emphasis and citations omitted).)  Reasoning that trial counsel "could neither prevent [n]or even object to" this structural error because it took place "outside of counsel's control" and "behind defense counsel's back" (see Docket #9-2 at 19-20), Petitioner urges that the courtroom closure's "surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness [should be] properly presumed." (Docket #9-2 at 19 (alteration in original) (emphasis omitted) (quoting United States v. Cronic, 466 U.S. 648, 661 (1984)); see also Docket #25 at 4-5; supra note 2.)  The Massachusetts Appeals Court rejected this contention in Felton II.  See 2015 Mass. App. Unpub. LEXIS 729, at *3-4.  I find that the Appeals Court's decision is neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," and thus merits deference.  See 28 U.S.C. § 2254(d).  I therefore recommend that the Court GRANT Respondent's cross-motion for summary judgment as to Ground Two.

The Supreme Court has said that "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding."  Strickland v. Washington, 466 U.S. 668, 691-92 (1984).  This guarantee of counsel ensures not merely formal appointment of an attorney, but the right to a "reasonably competent attorney . . . acting in the role of an advocate."  Cronic, 466 U.S. at 655-56 (citations omitted).  The right to counsel therefore is constructively denied when "the surrounding circumstances ma[k]e it so unlikely that any lawyer could provide effective assistance that

ineffectiveness [is] properly presumed." Cronic, 466 U.S. at 661 (characterizing the circumstances surrounding representation provided to the defendants in Powell v. Alabama, 287 U.S. 45 (1932)). Consistent with these notions, the SJC more recently described the constructive denial of counsel as occurring when "the defendant essentially is denied the assistance of any qualified attorney who could theoretically represent him in a way that does not undermine our trust in the adversary system." Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *3-4 (quoting Commonwealth v. Valentin, 470 Mass. 186, 197 (2014)).

Far from a decision that is contrary to or unreasonably applies these precedents, the Massachusetts Appeals Court's rejection of Petitioner's constructive denial of counsel claim faithfully adheres to them. Its analysis of Petitioner's claim focused on counsel's performance, on the effect of the closure during jury empanelment on that performance, and on the reliability of the outcome of Petitioner's trial. The Appeals Court described Petitioner's trial counsel as "competent" and "well-prepared . . . at all critical stages of the proceedings, including jury empanelment." Id. at *3 (citing Cronic, 466 U.S. 648). In this regard, the Appeals Court found that circumstances in which "the defendant essentially is denied the assistance of any qualified attorney who could theoretically represent him in a way that does not undermine our trust in the adversary system . . . did not happen here." Id. at *4. Separately, the Appeals Court found that Petitioner did not show that "he was prejudiced by the closure" and concluded that "there was [therefore] no risk that justice miscarried." Id. at *3. Finally, focusing on the very narrow issue of the courtroom closure, the court further noted that the courtroom closure did not actually prevent Petitioner's counsel from effectively assisting him, emphasizing that Petitioner "did not inform his counsel or the judge when he saw his family being escorted from the court room." Id. at *4.

These conclusions easily square with Supreme Court jurisprudence. The trial record makes clear that the closure, though a structural error, affected no more than trial counsel's ability to object to the closure. Petitioner and trial counsel actively participated in the jury selection process, and Petitioner himself accompanied his attorney each time the trial court questioned potential jurors at sidebar. (Docket # 1-1 at 61.) The Appeals Court expressly noted that during this process, counsel was "competent" and "well-prepared." Felton II, 2015 Mass. App. Unpub. LEXIS 729, at *3. Trial counsel testified that she did not notice the absence of Petitioner's family from the courtroom because she was "focus[ed] on picking a jury that day." (Docket #1-1 at 54-55.) Although Petitioner's family and supporters were excluded during empanelment, the jury venire, from which the petit jury was chosen, observed the jury selection process. (See id. at 43-45.) The court officers who initiated the closure did not lock the courtroom door or display a sign warning the public not to enter the courtroom. (See id. at 48.) As noted supra,[11] Petitioner has not alleged that any of the "potential harms" of a courtroom closure came to pass at any point in his proceedings: his filings contain no suggestion that a juror lied during voir dire, no allegation of attorney or judicial misconduct, and no suggestion that any participant failed to approach their duties with neutrality and serious purpose. Cf. Weaver, 137 S.Ct. at 1913 (citing In re Oliver, 333 U.S. at 269 n.22). Moreover, once the petit jury was empaneled, the entire balance of the trial was conducted openly and publically. (Docket #1-1 at 9.) Finally, the Appeals Court rejected claims of alleged errors that Petitioner has sought to attribute to his trial counsel. See generally Felton I, 2011 Mass. App. Unpub. LEXIS 10. This record fully supports the Massachusetts Appeals Court's finding that the closure was not the type of "surrounding circumstance" from which a constructive

---

[11] See supra Part III.B.1.ii.c.

denial of counsel can be inferred or that calls into question the reliability and fairness of Petitioner's trial.

For these reasons, I recommend that the Court DENY Petitioner's Motion for Partial Summary Judgment (Docket #13) and GRANT Respondent's Cross-Motion for Summary Judgment (Docket # 22) as to Ground Two.

C.  Motions to Amend and Supplement the Petition

Because Respondent has moved for summary judgment as to Ground Four, which Petitioner did not include in the original petition, I ALLOW Petitioner's motion to amend the petition to add Ground Four and to clarify the wording of Ground Two.  (Docket #9.)  However, because I recommend that summary judgment should enter in Respondent's favor on all four grounds, see supra, I DENY as futile Petitioner's other motions to amend and supplement the petition.  (See Docket ##28, 34, 36, 38, 41, and 43.)

D.  Motions for Bail

I turn next to Petitioner's motions for bail.  On November 9, 2016, Petitioner filed a Motion for Bail on Recognizance pending this Court's decision on his petition for habeas corpus.  (Docket #10.)  Petitioner then filed a Motion to Defer Judgment on his Motion for Release pending this Court's decision on Petitioner's Motion for Partial Summary Judgment (see Docket #13), which Petitioner filed in the interim.  (Docket #20.)  On February 6, 2017, after learning of an illness in his family, Petitioner renewed his Motion for Release.  (Docket #26.)

In his First Motion for Release, Petitioner principally contends that he should be released from confinement on personal recognizance because of his likelihood of success on the merits.  (Docket #10.)  In his Second (Renewed) Motion for Release, Petitioner asks for release on the grounds of "extraordinary circumstances," namely, a family member's cancer diagnosis.  (Docket

#26.)  See Healy v. Spencer, 406 F. Supp. 2d 129, 130 (D. Mass. 2005) (citing Glynn v. Donnelly, 470 F.2d 95 (1st Cir. 1972)).

I DENY Petitioner's motions for bail.  (Docket #10 and #26.)  In assessing a motion for bail, courts look to whether "the petitioner has raised substantial constitutional claims upon which he has a high probability of success."  Inman, 2015 U.S. Dist. LEXIS 147908, at *5 (quoting Vogel, 595 F. App'x at 416-17).  In light of my recommendation that the Court grant Respondent's Cross-Motion for Summary Judgment, see supra, I find that Petitioner cannot make such a showing here.  Moreover, I find that a family member's illness does not constitute extraordinary circumstances warranting bail.  See Inman, 2015 U.S. Dist. LEXIS 147908, at *5 (quoting Blocksom, 2015 U.S. Dist. LEXIS 6974, at *4 & n.2) ("'[F]ederal courts very rarely find 'exceptional circumstances' and very rarely release petitioners before ruling on the merits of their claims.  Indeed, there seem to be but a handful of decisions in which federal courts have released petitioners pending review of their claims.'").

I also DENY Petitioner's Motion for Hearing (Docket #37) and DENY AS MOOT Petitioner's Motion to Defer Judgment (Docket #20).

V.      CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Respondent's Cross-Motion for Summary Judgment (Docket #22) and DENY Petitioner's Motion for Partial Summary Judgment (Docket #13).[12]

Further, Petitioner's First Motion to Amend Habeas Corpus Petition (Docket #9) is hereby ALLOWED; Petitioner's (1) Motion for Bail (Docket #10), (2) Renewed Motion for Bail (Docket #26), (3) Motion for Leave to Supplement Reply to Respondent's Cross-Motion for Summary Judgment (Docket #28), (4) Motion for Judicial Notice (Docket #30), (5) Second Motion for Leave to Supplement Reply to Respondent's Cross-Motion for Summary Judgment (Docket #32), (6) Second Motion to Amend Habeas Petition (Docket #34), (7) Second Motion for Judicial Notice (Docket #35), (8) Third Motion to Amend Habeas Petition (Docket #36), (9) Motion for Hearing (Docket #37), (10) Motion to Supplement Proposed Amendment to Habeas Petition (Docket #38), (11) Fourth Motion to Amend Habeas Petition (Docket #41), and (12) Fifth Motion to Amend Habeas Petition (Docket #43) are hereby DENIED; and Petitioner's Motion to Defer Judgment (Docket #20) is hereby DENIED AS MOOT.


/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[12]  The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).